IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-cv-544

KEVIN L. OLLIS,

    Plaintiff,

vs.

TEACHERS INSURANCE AND ANNUITY
ASSOCIATION OF AMERICA,

    Defendants.

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

PLAINTIFF Kevin L. Ollis ("Mr. Ollis" or "Plaintiff"), by and through undersigned counsel, hereby complain against Defendant Teachers Insurance and Annuity Association of America ("TIAA" or "Defendant"), and allege as follows:

## PARTIES

1. Mr. Ollis is a resident and citizen of Cabarrus County, North Carolina.

2. TIAA is a company created under the laws of the State of New York and registered to do business in North Carolina, with its principal place of business located at 730 3rd Ave., New York, New York, 10017.

3. TIAA conducts business in North Carolina at 8500 Andrew Carnegie Boulevard, Charlotte, NC 28262.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 because this action has been filed under 42 U.S.C. § 12101 *et seq.*

5. Venue is proper pursuant to 28 U.S.C. § 1391.

6. TIAA is a private company that employees more than 15,000 people.

7. TIAA is an employer within the meaning of 42 U.S.C. § 12111(5), and a covered entity within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2.

8. Mr. Ollis was diagnosed with otosclerosis when he was in his twenties. Otosclerosis is a degenerative disease which affects the ability to hear, and gets progressively worse with age.

1

9. Mr. Ollis has had three surgical procedures performed in an attempt to reverse his hearing loss. All three attempts have failed.

10. Mr. Ollis's hearing loss was permanent and progressively worsened.

11. Mr. Ollis was hired by TIAA on or about May 7, 2001.

12. In 2018 Mr. Ollis was prescribed and received hearing aids due to his otosclerosis.

13. Mr. Ollis's performance reviews were all "3.5 out of 5" which is "better than average."

14. Mr. Ollis had not been disciplined by TIAA for poor job performance in his final 5 years with TIAA.

15. In 2024 Mr. Ollis held the role of National Contact Center Team Manager for TIAA.

16. As part of his job duties Mr. Ollis supervised ten to twenty employees responding to client or customer concerns.

17. In 2022 Christopher Bristow ("Mr. Bristow") became Mr. Ollis's direct supervisor and was his supervisor at the time of termination.

18. Mr. Bristow's role was National Contact Center Leader for TIAA.

19. Mr. Ollis's hearing loss is a disability as defined by 42 U.S.C. § 12102(1)(A).

20. Mr. Ollis is a "qualified individual" pursuant to 42 U.S.C. § 12111(8).

21. Upon TIAA's return to office following COVID-19, Mr. Ollis's hearing loss became a more significant challenge for him completing his work due to the added background noise.

22. Mr. Ollis's schedule required that he be "in office" three days a week, and work from home the other two days.

23. On July 5, 2023, Mr. Ollis applied for, and was granted a job accommodation, due to his hearing loss.

24. In his job accommodation request Mr. Ollis requested access to an office separate from "the floor" to minimize background noise so he could adequately perform his duties.

25. In response to his accommodation request TIAA authorized Mr. Ollis to "reserve" office space through TIAA's "book-it" system.

26. Offices were frequently not available to Mr. Ollis on days when he was required to work in the office.

27. When Mr. Ollis could not reserve an office, or office space was limited, he was forced to travel to his home to complete his work.

28. Mr. Ollis was removed from a "reserved" office space on one occasion.

29. TIAA failed to engage in their interactive process for job accommodations, as required by company policy.

30. TIAA failed to provide or offer Mr. Ollis Bluetooth accessibility on his workstation phone.

31. Despite Mr. Ollis's documented hearing loss and approved job accommodation, Mr. Ollis's former manager emailed him stating TIAA's preference was that Mr. Ollis was on "the floor" with other team members.

32. The accommodations TIAA provided were inadequate in light of the requirements of the Americans with Disabilities Act (the "ADA").

33. In 2023 Mr. Ollis made frequent verbal requests to his supervisors for additional accommodations.

34. During these conversations, Mr. Ollis requested noise canceling blue tooth headphones for zoom meetings, better access to an office or quiet workspace, or speakers to amplify the sound from zoom meetings and calls.

35. In April 2024 TIAA alleged that Mr. Ollis was not conducting "service observes" as part of his job requirements.

36. A "service observes" is when a team manager provides their team with real time support and feedback during client calls.

37. Mr. Ollis had always conducted his "service observes" by playing the call back on a recording when he was at home, or in another quiet location, and then providing feedback to his team members on their performance. He was never able to conduct live "service observes" due to his hearing loss and limitations.

38. Mr. Ollis had conducted his "service observes" in this manner for years prior to his termination.

39. Mr. Ollis had never been reprimanded or otherwise disciplined for not performing "service observes" until after he requested, and was granted, disability accommodations.

40. In or about April 2024, Mr. Bristow informed Mr. Ollis that Mr. Ollis had not been completing the "service observes" in accordance with TIAA's polices.

41. In response, Mr. Ollis requested permission to be allowed to conduct a "service observes" by listening to recordings of the calls at later time, as he had done for years.

42. Mr. Bristow insisted that Mr. Ollis conduct his "service observes" using software to listen in on live phone calls. Mr. Ollis was unable to get the software to work correctly such that he could conduct a live "service observe."

43. Mr. Bristow never offered any other accommodation to Mr. Ollis regarding the "service observes."

44. Michelle Kerr ("Mrs. Kerr") was the Managing Director of the National Contact Center for TIAA. Mrs. Kerr was Mr. Bristow's direct supervisor.

45. On June 3, 2024, Mrs. Kerr told Mr. Ollis that, in her opinion, TIAA had not done enough to accommodate his hearing loss.

46. Mrs. Kerr advised Mr. Ollis to formally update his job accommodation request due to Mr. Ollis's hearing loss.

47. Mr. Ollis told Mrs. Kerr that he was planning to do so. Mr. Ollis printed out the form and began the process of filling it out.

48. Mr. Ollis informed the human resources department that he was planning to update his job accommodation request.

49. On June 18, 2024, Mr. Ollis emailed Mrs. Kerr confirming he was submitting a new job accommodation request, pursuant to her instructions.

50. Mr. Ollis could have performed the essential functions of his job with reasonable accommodations.

51. TIAA refused to make such accommodations, despite notice of Mr. Ollis's hearing loss and disability.

52. On June 21, 2024, TIAA terminated Mr. Ollis's employment.

53. Upon information and belief, TIAA terminated Mr. Ollis's employment due to his disability.

54. Mr. Bristow alleged that Mr. Ollis was terminated for falsely documenting and closing fifty-three (53) customer complaints (the "Complaints").

55. Mr. Ollis did not improperly close or falsely document the Complaints.

56. In 2007, when Mr. Ollis was trained, he was informed that he could use his discretion when, and how, to respond to customer complaints. If Mr. Ollis felt the client issue warranted a call, he would designate a member of his team call the customer.

57. Mr. Ollis explained this training and Mr. Ollis's understanding of his job requirements to Mr. Bristow on or about June 12, 2024.

58. Until June 12, 2024, TIAA never informed Mr. Ollis that he was, allegedly, failing to perform his job requirements related to customer complaints.

4

59. Prior to June 12, 2024, Mr. Ollis had never been reprimanded or disciplined for poor job performance.

60. Mr. Ollis filed a charge of discrimination with the Equal Opportunity Employment Commission (the "EEOC") on September 30, 2024, alleging that TIAA discriminated against him by failing to accommodate his disability, and terminating his employment because of his disability.

61. The EEOC issued a Notice of Right to Sue to Mr. Ollis regarding his claim on April 30, 2025.

## FIRST CAUSE OF ACTION
### Discrimination Under the Americans with Disabilities Act
### 42 U.S.C. § 12112 *et seq*.

62. Plaintiff re-alleges and incorporates the preceding paragraphs as if stated in full herein.

63. Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. § Part 1630, requires covered employers, such as TIAA, to provide reasonable accommodations to otherwise qualified employees with disabilities and prohibits terminating employees because of their disabilities.

64. Requesting a job accommodation for a physical disability is a protected activity under the ADA.

65. Otosclerosis that causes degenerative hearing loss is qualifies as a disability under the ADA.

66. TIAA failed to provide Mr. Ollis reasonable accommodation for his disability.

67. Mr. Ollis was terminated by TIAA because he was in the process of requesting a new job accommodation for his hearing loss.

68. TIAA used the pretext of Mr. Ollis's alleged poor job performance to terminate him.

69. TIAA terminated Mr. Ollis because of his hearing loss in violation of the ADA.

## SECOND CAUSE OF ACTION
### Retaliation
### 42 U.S.C. § 12203

70. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully alleged herein.

71. Requesting a job accommodation for a physical disability is a protected activity under the ADA.

72. Plaintiff contacted TIAA's Human Resources department regarding his disability, and Plaintiff's allegations of discrimination, on June 20, 2024.

73. Plaintiff previously informed Ms. Kerr, on June 18, 2024, that he was updating his disability accommodation requests.

74. Plaintiff's termination on June 21, 2024, constitutes an adverse employment action.

75. TIAA terminated Plaintiff's employment in response to Plaintiff informing Ms. Kerr that he was updating his accommodation request, and/or in response to Plaintiff's June 20, 2024, complaints related to Plaintiff's disability, accommodations, and discrimination.

WHEREFORE, Plaintiff prays unto the Court for the following relief:

1. For entry of a money judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial;

2. For an award of pre-judgment interest at the maximum rate allowed by law;

3. For an award of Plaintiff's reasonable attorney's fees to the maximum extent allowed by law;

4. For a trial by jury on all issues so triable; and

5. For such other and further relief that the Court may deem just and proper.

THIS the 24th day of July, 2025.

**TLG Law**

/s/ Alec S. Jalovec
Alec S. Jalovec (NC Bar #50793)
David G. Redding (NC Bar #24476)
2907 Providence Road, Suite 303
Charlotte, North Carolina 28211
Tel. & Fax: 704-900-2215
ajalovec@tlg-law.com
dredding@tlg-law.com
*Attorneys for Plaintiff*